## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

DON LEE ELBERT II                                                      PETITIONER
Reg. #19128-045

V.                              NO. 2:15CV00205-KGB-JTR

C.V. RIVERA, Warden,                                                   RESPONDENT
FCI-Forrest City Medium

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent

to United States District Judge Kristine G. Baker. You may file written objections to

all or part of this Recommendation. If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of this Recommendation.

By not objecting, you may waive the right to appeal questions of fact.

### I. Background

Pending before the Court is a 28 U.S.C. § 2241 Petition for Writ of Habeas

Corpus filed by Don Lee Elbert II ("Elbert"), a federal prisoner who was formerly

incarcerated in the Federal Correctional Institution in Forrest City, Arkansas ("FCI-

Forrest City").[1] *Doc. 1*. In his habeas papers, he alleges that the Bureau of Prisons

---

[1]Elbert is now designated to Kansas City-Residential Reentry Management, in Kansas
City, Missouri. *Docs. 33 & 34*; *see also* www.bop.gov/inmateloc.

("BOP") has "mishandled" his legal mail in violation of BOP policy, the United States Constitution, and various other federal laws.

Before addressing the merits of these claims, the Court will review the relevant procedural history of Elbert's federal conviction and subsequent incarceration in the BOP.

In May 2007, Elbert pleaded guilty, in the Western District of Missouri, to one count of sex trafficking of a minor. He was sentenced to ninety-six months of imprisonment, followed by fifteen years of supervised release. *Doc. 25-1, at 55-61*. On April 6, 2009, the Eighth Circuit Court of Appeals affirmed Elbert's conviction. *United States v. Elbert*, 561 F.3d 771 (8th Cir. 2009).

On September 12, 2013, Elbert was released from the BOP and placed on supervised release. *Doc. 25-1, at 52, 81*.

On March 25, 2014, the sentencing Court revoked Elbert's supervision and sentenced him to thirty-six months of imprisonment, followed by fifteen years of supervised release. *Id. at 68-75, 78.*

On June 19, 2015, the Eighth Circuit affirmed the revocation decision and sentence. *United States v. Elbert*, 617 F. App'x 599 (8th Cir. 2015) (unpub. op.). On July 2, 2015, Elbert filed a "Notice of Appeal," stating that he "intends to petition the Supreme Court to be allowed to file his appeal." He also requested the appointment

of a new lawyer. The Eighth Circuit docketed Elbert's "Notice of Appeal" as a "Petition for Rehearing." *United States v. Elbert*, 8th Cir. Case No. 14-1830.[2]

On July 7, 2015, Elbert's attorney wrote him a letter. In his habeas papers, Elbert alleges this "legal mail" was "open[ed], cop[ied], and ke[pt]" by BOP officials. *Doc. 1, at 6*.

The July 7 letter is not a part of the record in this case. However, the attorney who wrote that letter summarized its contents in a later letter, dated September 16, 2015, which is a part of the record. *Doc. 1, at 17-18*. According to the summary, the July 7 letter advised Elbert of the following: (1) if Elbert wanted him to file a petition for writ of certiorari with the United States Supreme Court, he needed to immediately advise his attorney (the author of the letter) of that decision; (2) there was a ninety-day deadline for filing a petition for certiorari; and (3) Elbert needed to contact him "well in advance" of the deadline if he wanted him to file a petition for certiorari with the United States Supreme Court. *Id*.

On July 23, 2015, Elbert filed a "Notice of Dismissal of All Attorneys of Record" with the Eighth Circuit. He again asked the Eighth Circuit to appoint him a new lawyer. *United States v. Elbert*, 8th Cir. Case No. 14-1830.

---

[2]Although Respondent described "Exhibit B" as the docket sheet for Eighth Circuit Case No. 14-1830, no "Exhibit B" was attached to his Response. *See Doc. 25, at 5*. However, this Court has electronically accessed the docket sheet and the relevant docket entries.

On August 25, 2015, the Eighth Circuit summarily denied Elbert's Petition for Rehearing and his request for appointment of new counsel. *Id.* On September 1, 2015, the mandate issued. *Id.*

On September 16, 2015, Elbert's attorney wrote him a second letter, as a follow-up to his July 7 letter. *Doc. 1, at 17-18.*[3] In the September 16 letter, Elbert's attorney advised him of the status of a number of important matters:

> Since [writing the July 7, 2015 letter] we have spoken on the phone and you said that you wanted me to take no further action in your case, and wanted me to withdraw in representing you. You sent me a letter to that same effect, and filed pleadings with the 8th Circuit Court of Appeals also seeking new counsel, and asking that I withdraw as your attorney.
>
> Since the only response I received to my July 7th letter was oral and written statements from you asking that I withdraw from representing you, I have not prepared a petition for cert with the Supreme Court. As you might guess these are not simple pleadings to prepare, and they cannot be done on the spur of the moment.
>
> This morning, September 16, 2015, you left me a voice mail saying that you now wanted me to file a petition with the Supreme Court. The purpose of this letter is to let you know that I am unable to do that on such short notice, and therefore will not be filing a petition for cert. By my calculations your petition is due tomorrow, which would mean it would have to be prepared today and mailed for overnight delivery. There is simply no way that I can get that done today.
>
> While I was dictating this letter you called and we spoke on the phone. I told you that I would not be able to prepare the petition, and we briefly discussed other matters regarding your supervision when you are released. ...

*Id.*

---

[3]The September 16, 2015 letter is part of the record in this case.

Respondent states – and an independent search of the Supreme Court's database confirms – that no petition for writ of certiorari was filed by either Elbert's attorney or by Elbert himself on a *pro se* basis. *See Doc. 25-1, at 4-5.*

On July 10, 2015, Elbert submitted a written administrative remedy request to the BOP, complaining about "numerous occasions, over the past several months," when his legal mail was opened outside his presence at FCI-Forrest City, in violation of BOP policy and his constitutional rights.[4] *Doc. 1, at 10.*

On July 21, 2015, the FCI-Forrest City warden denied relief, and Elbert appealed. On August 5, 2015, the BOP Regional Director denied his appeal. Elbert then appealed to the Central Office. *See id. at 10-12; Doc. 25-1, at 84.*

On October 13, 2015, the Central Office rejected Elbert's appeal because he did not provide a copy of his administrative remedy request or the warden's response. He was afforded an opportunity to correct and resubmit his appeal "in proper form," within fifteen days. *Doc. 1, at 15.*

On October 24, 2015, Elbert received a copy of the Central Office's rejection notice. *Id. at 16.* Because of a delay in Elbert receiving that document, BOP staff provided him with a memorandum, in compliance with BOP policy, that permitted a "late submission of his appeal." *Id.; see* 28 C.F.R. § 542.14(b).

---

[4]Presumably, one of these items of "legal mail" was Elbert's attorney's July 7, 2015 letter to him.

According to BOP records, Elbert did *not* resubmit his appeal or undertake any further action to pursue the administrative grievance after its rejection by the Central Office. *Doc. 25-1, at 7-8, 82-85; see* 28 C.F.R. § 542.17 (providing for resubmission of rejected appeals, and for appeals of rejections).

On December 22, 2015, Elbert filed this § 2241 habeas action.[5] The gist of his

---

[5]Among other things, Elbert's habeas papers seek relief under:

- The Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq. Doc. 1 at 2, 5-6; Doc. 12 at 2-23.*
- The First, Fourth, Fifth, Eighth, Eleventh, Thirteenth and Fourteenth Amendments to the United States Constitution, and the Commerce and Due Process Clauses. *Doc. 1 at 4-5; Doc. 2 at 2-5.*
- 28 C.F.R. § 540.12, *et seq.* (governing BOP's handling of inmate mail). *Doc. 1 at 2-3.*
- BOP Program Statements 5265.14 ("Correspondence") & 5800.10 ("Mail Management Manual"). *Doc. 1 at 2-3; Doc. 2 at 1.*
- 28 U.S.C. § 2401 (entitled "Time for commencing action against United States"). *Doc. 1 at 5.*
- "Redemption of the pledge" under 31 U.S.C. § 5118 (entitled "Gold clauses and consent to sue"). *Doc. 1 at 5; Doc. 21 at 1.*
- Public Law 73-10 (suspending the gold standard in the United States). *Doc. 1 at 5; Doc. 21 at 1.*
- The "Clearfield Trust Doctrine," based on *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943) (setting forth circumstances under which federal common law displaces state law). *Doc. 1 at 5; Doc. 5 at 5; Doc. 12 at 3-23.*
- The "Universal Postal Union Treaty." *Doc. 1 at 5-6.*
- Executive Order 10727(designating the Universal Postal Union and other entities as "public international organizations"). *Doc. 1 at 5.*
- The International Commerce Treaty. *Doc. 1 at 5.*
- 28 C.F.R. § 306 (which does not exist). *Doc. 2 at 1.*
- The Contract Disputes Act, 41 U.S.C. § 601 *et seq. Doc. 2 at 4-5.*
- 28 U.S.C. § 535 ("Investigation of crimes involving Government officers and employees; limitations"). *Doc. 2 at 5.*
- 18 U.S.C. § 1709 ("Theft of mail matter by officer or employer"). *Doc. 2 at 5.*
- The Fair Debt Collection Practices Act, 15 U.S.C. § 1692. *Doc. 12 at 3-23.*
- The Administrative Remedy Act, 28 C.F.R. § 542 *et seq. Doc. 12 at 3-23.*
- The Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq. Doc. 1 at 9, 22-25; Doc.*

habeas claim is that the FCI-Forrest City mail staff has engaged in "continuous wanton activity," in violation of BOP policy and federal law, by "opening, copying, losing, and mishandling" his legal mail, "all in effort to derail ongoing legal proceedings." He also argues that the mail staff are "working in concert" with other BOP officials by "deliberately making false representations," "covering up for one another," and writing retaliatory "frivolous reports and actions," which have caused him to be placed in segregation. *Doc. 1, at 1-6; Doc. 2, at 2*.

With regard to the "missing" July 7, 2015 letter from his attorney, Elbert asserts that the actions of unidentified BOP officials, in "opening, copying and keeping" that letter, constituted "false imprisonment." He also contends that, as a result of the BOP keeping this letter from him, he was deprived of the chance to file a petition for writ of certiorari with the United States Supreme Court. Because the United States Supreme Court "most likely would have overturned this unlawful illegal sentence," Elbert claims that the BOP's misconduct has resulted in him serving "a potentially longer term of incarceration." *Doc. 1, at 6*.

Respondent argues that Elbert's claims: (1) are not cognizable in a federal habeas action; (2) were not fully exhausted through the BOP's administrative remedy process; and (3) fail to establish a meritorious access-to-courts claim. *Doc. 25*.

---

*12 at 3-23; Doc. 21 at 2-3*.
- The Uniform Commercial Code. *Doc. 20; Doc. 21 at 1*.

For the reasons explained below, the Court recommends that all of Elbert's habeas claims be dismissed, without prejudice.

## II. Discussion

### A.   Elbert's Failure to Exhaust His Administrative Remedies Bars the Court From Considering Any of His § 2241 Habeas Claims

A prisoner who files a § 2241 habeas Petition challenging the actions of prison authorities must first exhaust the "administrative procedures which provide a real possibility for relief." *Willis v. Ciccone*, 506 F.2d 1011, 1014-15 (8th Cir. 1974);[6] *Mason*, 531 F.2d at 868-69; *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). Administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

While Elbert filed an administrative grievance challenging the alleged mishandling of his mail, he did not properly submit a final appeal, *in proper form*, to the Central Office. After receiving the Central Office's October 13, 2015 rejection notice, which gave Elbert additional time to refile his appeal, with copies of the

---

[6]Administrative exhaustion promotes four objectives: "(1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level." *Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976).

missing forms, he did *not* do so and failed to fully and properly exhaust the BOP's administrative remedy process.[7]

Instead of completing the BOP's administrative remedy process, it appears Elbert initiated a claim under the Federal Tort Claims Act ("FTCA"). *See Doc. 1, at 9, 22-25.* Even if the Court assumes that Elbert properly exhausted his administrative remedies in connection with his FTCA claim,[8] it would *not* relieve him of the independent obligation of exhausting his administrative remedies, as required by BOP regulations, *before* initiating this § 2241 habeas action. *See Nesbitt v. Ives*, 2015 WL 4208466, *3 (C.D. Cal. July 10, 2015) (prisoner cannot "use his alleged compliance with the claims presentation requirement for pursuing an FTCA lawsuit to avoid the consequences of his noncompliance with the separate exhaustion requirement" for a § 2241 habeas claim).

Accordingly, this § 2241 habeas action should be dismissed, without prejudice, due to Elbert's failure to fully and properly exhaust his administrative remedies as required by BOP regulations.

**B.    Elbert's Habeas Claims Are Also Either Not Cognizable or No**

---

[7]In his habeas papers, Elbert argues that, on October 13, 2015, the Central Office "defaulted" and "never addressed" his grievance. *Doc. 1, at 2*. He also argues that, after the Central Office "failed to provide the mandated equitable remedy and relief," his only recourse was to file a tort claim. *Id. at 24*. None of those self-serving arguments are supported by any facts.

[8]*See* 28 U.S.C. 2675(a); 28 C.F.R. § 14.2(a).

**Longer Actionable Under § 2241**

Habeas corpus is the exclusive remedy when a claim "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). A civil rights complaint, on the other hand, "is a proper remedy for a ... prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Id.* at 499.

The Eighth Circuit has held that, if a habeas petitioner is not challenging the validity of his criminal conviction or sentence, or the length of his confinement, a habeas court lacks jurisdiction to grant relief. *Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014) (use of restraints); *Khaimov v. Christ*, 297 F.3d 783, 785-86 (8t Cir. 2002) (segregation and "mishandling of his mail by the prison facility"); *Kruger v. Erickson*, 77 F.3d 1071, 1073-74 (8th Cir. 1996) (taking of blood sample).

Elbert asserts only *one claim* challenging the constitutionality of his conviction or sentence: By keeping and preventing him from seeing his attorney's July 7, 2015 letter, the BOP caused him to miss the deadline for filing a petition for writ of certiorari appealing the Eighth Circuit's affirmance of his conviction to the United States Supreme Court. As previously explained, this claim should be dismissed, without prejudice, because Elbert failed to properly and fully exhaust his

administrative remedies.

All of Elbert's other conclusory and non-specific claims about the BOP's "mishandling" of his mail, improperly placing him segregation, and retaliating against him, do *not* challenge his federal conviction or sentence, and success on those claims would *not* result in an earlier release from prison. Accordingly, none of those claims can be properly maintained in a § 2241 habeas action. *See Spencer*, 774 F.3d at 470.

The Court declines to recharacterize Elbert's vague constitutional claims regarding mail mishandling, being placed in segregation, and retaliation as causes of action that might be cognizable under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[9] Even if those claims were recharacterized as civil rights violations under *Bivens*, the claims would still be barred because Elbert failed to fully and properly exhaust the BOP's administrative remedies for pursuing those claims in a *Bivens* action. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Ross v. Blake*, 2016 WL 3128839, *5 (U.S. June 6, 2016) ("As we have often observed, [§ 1997e(a)'s]

---

[9]*See Spencer*, 774 F.3d at 471 (before dismissing habeas petition raising conditions-of-confinement claims, District Court should consider whether the prisoner has raised a "potentially viable" constitutional claim and, if so, whether the case should be recharacterized as a civil rights action and the prisoner provided with an opportunity to pursue it as such).

language is 'mandatory.'").

In contrast, Elbert appears to have administratively exhausted his FTCA claims. However, those claims cannot be pursued in a habeas action because they do not challenge the fact or duration of his confinement.[10] Accordingly, the Court recommends that those claims be dismissed, without prejudice, to allow Elbert the opportunity to file a FTCA claim in a separate action.[11]

Finally, to the extent Elbert has raised any cognizable claims for declaratory relief based on the actions of FCI-Forrest City officials, those claims are now moot due to his later transfer to Kansas City-RRM. *See Gladson v. Iowa Dep't of Correction*, 551 F.3d 825, 835 (8th Cir. 2009) (claims for declaratory and injunctive relief are moot when a prisoner is transferred to another institution and is no longer subject to the conditions of which he complains).[12]

### III. Conclusion

---

[10]Elbert's administrative tort claim did *not* challenge the BOP's alleged conduct in keeping and preventing him from seeing his attorney's July 7, 2015 letter. *See Doc. 1 at 9, 22-23*.

[11]On January 22, 2016, the BOP's Regional Counsel denied Elbert's administrative tort claim. *Doc. 21 at 2-3*. The denial letter advised him that he had *six months* to bring an FTCA suit in the appropriate District Court. *Id. at 3*. *See* 28 U.S.C. § 1346(b) & §§ 2671, *et seq.*

[12]The other federal laws and treaties cited by Elbert, *see supra note 5*, provide no basis for maintaining this action: (1) for the same reasons as discussed regarding his other legal theories; (2) because Elbert has failed to establish that the cited laws have any bearing on his claims; or (3) because, in some cases, the claims are simply incomprehensible.

IT IS THEREFORE RECOMMENDED THAT this Petition for a Writ of Habeas Corpus, *Doc. 1*, be DENIED, and that this case be dismissed, without prejudice.

DATED this 28th day of June, 2016.

UNITED STATES MAGISTRATE JUDGE